UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PUGET SOUNDKEEPER ALLIANCE, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> SEATTLE IRON & METALS, CORP., ) <br> ) <br> Defendant. ) <br> ) | Case No. C12-1201 RSM <br><br> CONSENT DECREE |

## I.  STIPULATIONS

Plaintiff Puget Soundkeeper Alliance ("Soundkeeper") sent a notice of intent to sue letter to Defendant Seattle Iron & Metals Corp. ("SIMC") on May 11, 2012, alleging violations of the Clean Water Act ("CWA"), 33 U.S.C. § 1251 et seq., and the Resource Conservation and Recovery Act ("RCRA"), as amended, 42 U.S.C. § 6901 et seq., relating to releases of pollutants from SIMC's Facilities in Seattle, Washington and seeking declaratory and injunctive relief, civil penalties and attorneys' fees and costs (the "Notice Letter"). Soundkeeper sent a supplemental notice of intent to sue letter to SIMC on April 30, 2014, related to additional alleged violations of the CWA at Defendant's Facilities (the "Supplemental Notice Letter"). Soundkeeper sent a second supplemental notice letter to SIMC on May 11, 2017, related to additional alleged

CONSENT DECREE
 No. 12-01201RSM
 - 1

Smith & Lowney, p.l.l.c.
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

violations of the CWA at Defendant's Facilities (the "Second Supplemental Notice Letter).

Soundkeeper and SIMC agree that settlement of these matters is in the best interest of the parties and the public, and that entry of this Consent Decree is the most appropriate means of resolving this action.

Soundkeeper and SIMC stipulate to the entry of this Consent Decree without trial, adjudication, or admission of any additional issues of fact or law regarding Soundkeeper's claims or allegations set forth in its second amended complaint and its Notice Letter, Supplemental Notice Letter, and Second Supplemental Notice Letter.

DATED this January 17, 2019

SEATTLE IRON & METALS CORP.          PUGET SOUNDKEEPER ALLIANCE

By /s/ Alan Sidell                    By /s/ Chris Wilke
                                      Chris Wilke
Title: President                      Title: Executive Director & Soundkeeper

## II. ORDER AND DECREE

THIS MATTER came before the Court upon the Parties' Joint Motion for Entry of Consent Decree and the foregoing Stipulations of the parties. Having considered the Stipulations and the promises set forth below, the Court hereby ORDERS, ADJUDGES, and DECREES as follows:

1. This court has jurisdiction over the parties and subject matter of this action.

2. Each signatory for the parties certifies for that party that he or she is authorized to enter into the agreements set forth below.

3. This Consent Decree applies to and binds the parties and their successors and assigns.

4. This Consent Decree applies to the operation, oversight, or both by Defendant SIMC of its primary facility located at or about 601 South Myrtle Street, (the "601 Facility"), and its secondary facility located at or about 730 South Myrtle Street, (the "730 Facility") in Seattle,

CONSENT DECREE
No. 12-01201RSM
- 2

Smith & Lowney, p.l.l.c.
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

Washington (collectively, the "Facilities") within the Duwamish River watershed.

5. This Consent Decree is a full and complete settlement of the claims in the complaint and all other claims known and unknown existing as of the date of entry of this Consent Decree that could be asserted under the CWA or RCRA arising from operations of the Facilities. These claims are released and dismissed with prejudice. Enforcement of this decree is Soundkeeper's exclusive remedy for any violation of its terms.

6. This Consent Decree is a settlement of disputed facts and law. It is not an admission or adjudication regarding any allegations by Soundkeeper in this case or of any fact or conclusion of law related to those allegations.

7. SIMC agrees to the following terms and conditions in full and complete satisfaction of the claims covered by this decree:

a. SIMC will comply fully with all conditions of its National Pollutant Discharge Elimination System Permits Nos. WA003196 (the "Individual NPDES Permit") and WAR125002 (the "General NPDES Permit") and any successor, modified, or replacement permits;

b. <u>730 Facility Paving and Engineering Report and Implementation</u>

i. SIMC will conduct monthly stormwater discharge monitoring for the parameters identified in Table 1 of Administrative Order No. 13739 (Dkt. 42-23) (including PCB testing by EPA method 8082) for two years, except that SIMC may cease monthly monitoring for any non-PCB parameter that is not detected for twelve consecutive months of sampling.

ii. If any one discharge sample required by subparagraph 7(b)(i) shows (1) a violation of any effluent limitation; (2) any exceedance of a General NPDES Permit benchmark; or (3) a detection of PCBs, SIMC will, within three months, replace media in its Modular Wetland Treatment system with media that in the judgment of SIMC's consultants will result in compliance with General NPDES Permit limits and meeting

CONSENT DECREE
No. 12-01201RSM
- 3

Smith & Lowney, p.l.l.c.
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

benchmarks, and no future detections of PCBs.

iii. If, following the corrective action identified in subparagraph 7(b)(ii), two or more of SIMC's discharge samples show: (1) a violation of any effluent limitation; (2) any exceedance of a General NPDES Permit benchmark; or (3) a detection of PCBs, SIMC will, within three months, install and make operational an enhanced treatment system (Chitosan-enhanced sand filtration, electrocoagulation, ion exchange, polishing adsorptive media, or other enhanced treatment system that is equivalent to the foregoing and in the judgment of SIMC's consultants will result in compliance with General NPDES Permit limits, meeting benchmarks, and no future detections of PCBs).

c. <u>601 Facility Outfall Diffuser and Mixing Zone Report</u>

i. SIMC will complete replacement of the 601 Facility's outfall pipe with a Washington Department of Ecology ("Ecology")-approved outfall at a lower elevation;

ii. SIMC has submitted to Ecology a mixing zone modeling study and will respond in good faith to any Ecology comments. The mixing zone modeling will not apply to PCBs, and SIMC will not seek a mixing zone or dilution factor for PCBs. SIMC will seek dilution factors similar to those in its existing permit.

d. <u>601 Facility Docks and Shoreline Cleanup</u>

i. SIMC will keep the 601 Facility's south dock vacuum-swept and will not keep, store, or stage materials or equipment on the south dock unless and until the south dock is replaced or repaired such that all precipitation that falls on the south dock is directed to the 601 Facility's wastewater treatment system. SIMC will, within 30 days of filing this consent decree, amend its stormwater pollution prevention plan ("SWPPP") to include the best management practices ("BMPs") identified in this subparagraph 7(d)(i) and provide Soundkeeper with an electronic copy of its amended SWPPP.

ii. Not later than February 15, 2020, as long as SIMC receives the

CONSENT DECREE
No. 12-01201RSM
- 4

Smith & Lowney, p.l.l.c.
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

Corps of Engineers in water permit by April 1, 2019, SIMC will complete repairs to the 601 Facility's south dock, including replacing the dock's deck, such that all precipitation that falls on the south dock will be directed to the 601 Facility's wastewater treatment system.

    iii. SIMC will remove metal debris from the Duwamish River along the 601 Facility's shoreline under and around the south dock as part of the south dock repair project and annually thereafter shall conduct an underwater survey and remove all identified metal debris larger than six inches in any dimension. In addition, SIMC will remove smaller metal debris from the same area using a magnet. SIMC must promptly identify and apply for the permits necessary to complete timely debris removal. SIMC will conduct the survey and debris removal under this paragraph in the area under and around the south dock, including the area within 100 feet of the dock face.

    iv. SIMC will conduct an underwater survey and remove all metal debris from the Duwamish River along the 601 Facility's shoreline under and around the north dock on an annual basis. SIMC must promptly identify and apply for the permits necessary to complete timely debris removal. SIMC will conduct the survey and debris removal under this paragraph in the area under and around the north dock, including the area within 100 feet of the dock face.

  e. <u>Dust Control for Auto Shredder</u>.

    i. Not later than December 15, 2018, SIMC will complete design drawings for the shredder enclosure, blower, and dust collection system that meet the requirements of this section and are approved by Dr. Ranajit Sahu, the parties' joint consultant, and submit complete, approvable applications for any permits required for SIMC to install the enclosure, blower, and dust collection system. The shredder enclosure will address the dust from the shredding process itself and will create sufficient containment to allow a blower to create sufficient negative pressure within it to maximize the capture of dust emissions from the shredder,

CONSENT DECREE
No. 12-01201RSM
- 5

Smith & Lowney, p.l.l.c.
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

to the satisfaction of Dr. Sahu.

          ii.      Upon permit approval, SIMC shall promptly submit bids for fabrication of the dust control equipment. Upon completion of the fabrication, SIM shall promptly construct the dust control equipment. SIMC shall complete this work as soon as practicable, but no later than six months after permit approval.

          iii.      After the dust control equipment is installed and operational, SIMC will not operate its auto shredder unless all components of the enclosure described are fully intact and fully functional, and the blower, and dust capture system are fully functional and properly maintained.

    f.    <u>Wind fences.</u>

SIMC must, by December 15, 2018 apply for any permits required for the wind fences shown in green on **Attachment A**, and, within six months of permit approval, install and thereafter maintain the dust fences shown in green on **Attachment A**.

    g.    <u>Dust emissions monitoring and corrective action.</u>

Under the direction of Dr. Sahu and with Soundkeeper's full involvement, SIMC will design and implement a two-phase dust monitoring regime.

          i.      Phase I: Beginning in spring of 2019 SIM will conduct ten weeks of "background" dust monitoring at no fewer than three monitoring stations offsite, with the locations to be selected by Dr. Sahu with at least one station designed to capture dust concentrations in the vicinity of SIMC where SIMC is not expected to be contributing to TSP or other airborne pollutant concentrations. A meteorological station will also be maintained during the study period at the same location as in Dr. Sahu's 2018 study. Each monitoring station will monitor total suspended particulate ("TSP") and PM 2.5 on a

CONSENT DECREE
No. 12-01201RSM
- 6

Smith & Lowney, p.l.l.c.
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

continuous basis, and will also collect TSP for the duration. The collected TSP will be analyzed for PCBs using Method 1668, metals, and dioxins.

      ii.     Phase II: Beginning in the spring of 2020, starting on the same date as the Phase I sampling started, SIMC will conduct two years of continuous dust monitoring at the following locations: (1) the same two locations as in Dr. Sahu's 2018 study; and (2) at least three additional locations selected by Dr. Sahu on the north, south and east fence lines of SIM's 701 Myrtle parcel. At least one of the locations must be designed to capture dust from portions of the 701 Myrtle parcel where there is no dust fencing. Each monitoring station will monitor total suspended particulate (TSP) and PM 2.5 on a continuous basis, and will also collect TSP for the duration. The collected TSP will be analyzed for PCBs using Method 1668, metals, and dioxins, at the conclusion of each quarter. At the same time that it submits the collected TSP to the laboratory for analysis under Phase II, SIMC will also cause the dust collected during Dr. Sahu's 2018 monitoring to be analyzed for PCBs using Method 1668, metals, and dioxins. If there is an insufficient volume of dust in any sample to complete the foregoing analyses, Soundkeeper will determine the parameters to be analyzed.

iii.     Soundkeeper and SIMC will be copied on all substantive correspondence to and from Dr. Sahu by the other regarding dust analysis or the design of dust control measures or studies. Soundkeeper and SIMC will be invited to participate in any substantive meetings or conference calls with Dr. Sahu and the other entity. All data and documentation from the dust monitoring studies described in this consent decree will be shared with Soundkeeper within seven days of it becoming available to SIMC.

Smith & Lowney, p.l.l.c.
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

iv.     Corrective action: The data from the first dry season of the Phase II dust monitoring described above must be analyzed to determine if the controls are effective.  If the controls are not effective at reducing the dust concentrations during SIMC's operating hours (during dry weather) to 10 µg/m3, or the background level determined by Dr. Sahu based on additional data collection, and reducing PCBs to the background PCB levels determined in Phase I monitoring completed under subparagraph 7(g)(i) of this consent decree (hereinafter, the "Phase I background PCB level"), SIMC must commit to enhancing the controls as follows:

1.      If the dust controls installed at the 601 Myrtle parcel of the 601 Facility, or the 701 parcel of the 601 Facility are insufficient to reduce the dust concentrations during SIM's operating hours (during dry weather) to 10 $\mu g/m^3$, or the background level determined by Dr. Sahu based on additional data collection, or the PCBs are above the Phase I background PCB levels, SIMC will engage Dr. Sahu to inspect the pertinent facility and make recommendations for appropriate improvements to address the issues. Within two months of being consulted, Dr. Sahu will issue his recommendations. SIMC must implement Dr. Sahu's recommendations before the onset of the second dry season of the Phase II monitoring period.  If SIMC determines that one or more of the recommendations are not practicable or implementable then it must invoke the dispute resolution provisions of the consent decree and obtain relief from Dr. Sahu's recommendations from the Court in the form of a modification of the consent decree.

v.      SIMC will pay into Smith & Lowney PLLC's client trust account money sufficient to cover the cost of Dr. Sahu's work under this consent decree.  Smith &

CONSENT DECREE
 No. 12-01201RSM
- 8

Smith & Lowney, p.l.l.c.
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

Lowney PLLC will administer the funds to Dr. Sahu, but SIMC is solely responsible for adequately funding the trust account to cover the cost of Dr. Sahu's work and any subcontractors and laboratory costs.

  vi. SIMC will continue to maintain daily logs of dust observations and dust control efforts at the 601 Facility during the period May 1 through September 30 each year, and during extended dry periods (defined by the absence of rainfall for more than five days) during the period October 1 through April 30.  Not later than the date of entry of this Consent Decree, SIMC will begin keeping track of whether its auto shredder is operating normally and any unusual shredding activities with the potential to generate dust on the daily logs.  Log entries shall be made for all hours during which the Facility and/or the shredder operates.

  vii. Not later than the date of entry of this Consent Decree, SIMC will implement a program to discourage truck traffic associated with the Facilities from using certain residential streets nearby the Facilities.  Specifically, SIMC will post the Approved and Restricted Traffic Routes map and legend, attached to this Consent Decree as **Attachment B,** to its website, and provide copies of the map to and instruct trucks entering and exiting the Facilities to use the Approved Routes and avoid the Restricted Routes identified in Attachment B.

  vii. SIMC will arrange a meeting with Soundkeeper, the City of Seattle, and Ecology to discuss the Filterra treatment systems in the city right-of-way abutting the north and south sides of the 601 Facility and will employ its best efforts to coordinate with the City of Seattle and Ecology regarding this issue.

CONSENT DECREE
No. 12-01201RSM
- 9

Smith & Lowney, p.l.l.c.
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

g. Auto shredder residue ("ASR") piles.

i. Effective the date of execution of this Consent Decree, SIMC will limit the height of all ASR piles at the 601 Facility (including the 701 Myrtle parcel) to 12 (twelve) feet. SIMC must implement an adequate operational control to ensure compliance with this height limit.

ii. As soon as possible and not later than March 1, 2019, SIM will install an infrared heat monitoring and integrated fire suppression system for its ASR pile(s) at the 601 Myrtle parcel of the 601 Facility. The fire suppression system will use only water. The fire suppression system will be calibrated to avoid creating excessive runoff from the ASR piles. If fires occur at ASR pile(s) at the 701 parcel of the 601 Facility, SIM will evaluate installing a similar system at the 701 parcel.

h. Starting on the date of entry of this Consent Decree and continuing for five years, SIMC will forward all correspondence to and from the Department of Ecology, and all documents provided to the Department of Ecology, related to the NPDES Permits, and monthly dust control logs and dust observation or complaint emails SIMC receives in the corresponding month, to Soundkeeper on a monthly basis, and provide written summaries to Soundkeeper on its progress implementing the consent decree, on a quarterly basis. Where practicable, as in the case of structural improvements, SIMC will include photographs of tasks completed in its quarterly progress reports to Soundkeeper. SIMC will also provide Soundkeeper with electronic copies of its SWPPPs as required herein and upon request within 5 days.

i. Not later than thirty days after invoicing, SIMC will pay Soundkeeper its reasonable costs, including expert and attorneys' fees, of monitoring SIMC's compliance with this consent decree, and conferring regarding corrective actions and dispute resolution pursuant to this consent decree, in an amount not to exceed $50,000 (FIFTY THOUSAND DOLLARS).

CONSENT DECREE
No. 12-01201RSM
- 10

Smith & Lowney, p.l.l.c.
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

8. Not later than thirty days after the entry of this Consent Decree, SIMC will pay $200,000 (TWO HUNDRED THOUSAND DOLLARS) to the Rose Foundation for Communities and the Environment, as described in **Attachment C** of this Consent Decree, for environmental and human health benefit projects in the Duwamish River and central Puget Sound watersheds, with an emphasis on projects that relate to the intersection of water quality and human health, including aerial deposition of pollutants, in the Duwamish River watershed and food chains which rely on central Puget Sound and the health of its waters. Payment will be made to the order of and delivered to Tim Little, Rose Foundation for Communities and the Environment, 201 4th Street, Suite 102, Oakland, California 94607. Payment shall include the following reference in a cover letter or on the check: "Consent Decree, Soundkeeper v. Seattle Iron & Metals Corps." A copy of the check and cover letter, shall be sent simultaneously to Soundkeeper.

9. SIMC will pay Soundkeeper's reasonable attorney and expert fees and costs in the amount of $1,200,000 (ONE MILLION TWO HUNDRED THOUSAND DOLLARS). Payment will be made within 30 days of the entry of this decree by check payable and mailed to Smith & Lowney, PLLC, 2317 E. John Street, Seattle, Washington 98112, attn: Richard Smith. This payment is full and complete satisfaction of any claims Soundkeeper may have under the Clean Water Act and RCRA for fees and costs.

10. A force majeure event is any event outside the reasonable control of SIMC that causes a delay in performing tasks required by this decree that cannot be cured by due diligence. Delay in performance of a task required by this decree caused by a force majeure event is not a failure to comply with the terms of this decree, provided that SIMC notifies Soundkeeper of the event, the steps that SIMC will take to perform the task, the projected time that will be needed to complete the task, and the measures that have been taken or will be taken to prevent or minimize any impacts to stormwater quality resulting from delay in completing the task.

SIMC will notify Soundkeeper of the occurrence of a force majeure event as soon as reasonably possible but, in any case, no later than fifteen days after the occurrence of the event.

CONSENT DECREE
No. 12-01201RSM
- 11

Smith & Lowney, p.l.l.c.
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

In such event, the time for performance of the task will be extended for a reasonable period of time following the force majeure event.

By way of example and not limitation, force majeure events include

    a.    Acts of God, war, insurrection, or civil disturbance;

    b.    Earthquakes, landslides, fire, floods;

    c.    Actions or inactions of third parties over which defendant has no control;

    d.    Restraint by court order or order of public authority;

    e.    Strikes; and

    f.    Litigation, arbitration, or mediation that causes delay.

11.    This court retains jurisdiction over this matter. And, while this decree remains in force, this case may be reopened without filing fee so that the parties may apply to the Court for any further order that may be necessary to enforce compliance with this decree or to resolve any dispute regarding the terms or conditions of this decree. In the event of a dispute regarding implementation of, or compliance with, this decree, the parties must first attempt to resolve the dispute by meeting to discuss the dispute and any suggested measures for resolving the dispute. Such a meeting should be held as soon as practical but must be held within thirty (30) days after notice of a request for such a meeting to the other party and its counsel of record. If no resolution is reached at that meeting or within thirty (30) days of the notice, whichever occurs first, either party may file a motion with this court to resolve the dispute. The provisions of section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), regarding awards of costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, shall apply to any proceedings seeking to enforce the terms and conditions of this Consent Decree.

12.    The parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), no consent judgment can be entered in a Clean Water Act suit in which the United States is not a party prior to forty-five (45) days following the receipt of a copy of the proposed consent judgment by the

CONSENT DECREE
No. 12-01201RSM
- 12

Smith & Lowney, p.l.l.c.
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

U.S. Attorney General and the Administrator of the U.S. EPA. Therefore, upon the signing of this Consent Decree by the parties, Soundkeeper shall serve copies of it upon the Administrator of the U.S. EPA and the Attorney General.

13. This Consent Decree takes effect upon entry by the court. It terminates five years after entry by the Court.

14. Both parties have participated in drafting this decree.

15. This Consent Decree may be modified only upon the approval of the court.

16. If for any reason the court should decline to approve this Consent Decree in the form presented, this Consent Decree is voidable at the discretion of either party. The parties agree to continue negotiations in good faith in an attempt to cure any objection raised by the court to entry of this Consent Decree.

17. Notifications required by this Consent Decree must be in writing. The sending party may use any of the following methods of delivery: (1) personal delivery; (2) registered or certified mail, in each case return receipt requested and postage prepaid; (3) a nationally recognized overnight courier, with all fees prepaid; or (4) e-mail. For a notice or other communication regarding this Consent Decree to be valid, it must be delivered to the receiving party at the addresses listed below or to any other address designated by the receiving party in a notice in accordance with this paragraph 17.

**if to Soundkeeper:**

Katelyn Kinn
Puget Soundkeeper Alliance
130 Nickerson Street, Suite 107
Seattle WA 98109

email: katelyn@pugetsoundkeeper.org

**and to:**

Smith & Lowney PLLC
2317 East John St.
Seattle, WA 98112

CONSENT DECREE
No. 12-01201RSM
- 13

Smith & Lowney, p.l.l.c.
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

email: Claire@smithandlowney.com

**if to Seattle Iron & Metals Corp.**:
Stephen R. Parkinson
JOYCE ZIKER PARKINSON, PLLC
1601 Fifth Avenue, Suite 2040
Seattle, WA 98101
Email: sparkinson@jzplaw.com

A notice or other communication regarding this Consent Decree will be effective when received unless the notice or other communication is received after 5:00 p.m. on a business day, or on a day that is not a business day, then the notice will be deemed received at 9:00 a.m. on the next business day. A notice or other communication will be deemed to have been received: (a) if it is delivered in person or sent by registered or certified mail or by nationally recognized overnight courier, upon receipt as indicated by the date on the signed receipt; or (b) if the receiving party rejects or otherwise refuses to accept it, or if it cannot be delivered because of a change in address for which no notice was given, then upon that rejection, refusal, or inability to deliver; or (c) for notice provided via e-mail, upon receipt of a response by the party providing notice or other communication regarding this Consent Decree.

DATED this 15th day of March 2019.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

CONSENT DECREE
No. 12-01201RSM
- 14

Smith & Lowney, p.l.l.c.
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

Presented by:

| JOYCE ZIKER PARKINSON, PLLC | SMITH & LOWNEY PLLC |
|---|---|
| By: */s/Stephen R. Parkinson*<br>Stephen R. Parkinson, WSBA No. 21111<br>Attorneys for Defendant SIMC | By: */s/Claire E. Tonry*<br>Richard A. Smith, WSBA No. 21788<br>Claire E. Tonry, WSBA No. 44497<br>Attorneys for Plaintiff Soundkeeper |

CONSENT DECREE
No. 12-01201RSM
- 15

Smith & Lowney, p.l.l.c.
2317 East John St.
Seattle, Washington 98112
(206) 860-2883